66 So.2d 387 (1953)
REEVE
v.
CLEMENT-BRASWELL MACHINE & FABRICATING WORKS et al.
No. 7954.
Court of Appeal of Louisiana, Second Circuit.
June 30, 1953.
Rehearing Denied July 20, 1953.
Campbell & Campbell, Minden, for appellant.
McClendon & Benton, Minden, for appellees.
GLADNEY, Judge.
Lorell Reeve, appellee herein, brought this suit against his employer and its insurance carrier to recover total and permanent benefits under the Workmen's Compensation Act, LSA-R.S. 23:1021 et seq. He also asks that defendants be condemned to pay penalties allegedly due under provisions of LSA-R.S. 22:658. After trial there was judgment granting compensation *388 not to exceed 400 weeks, subject to credits for $30 weekly payments made from May 29, 1951 until March 7, 1952. The decree denied the claim for penalties. From this judgment defendants have appealed and plaintiff has answered the appeal for the purpose of renewing his claim for penalties.
Plaintiff, a twenty-three year old married man, was employed at the Clement-Braswell Machine and Fabricating Works on May 29, 1951, and was operating a sandblasting machine when he suffered the injuries complained of in the instant suit. His duties then required that he use the machine for removing paint and dirt from the bed of a U. S. Army dump truck. He and his Negro helper, Milton Morgan, were in the act of raising the truck bed weighing in excess of 1,500 pounds, with a mechanical hoist, when in some manner the chain to which the bed was attached slipped and the truck bed fell on top of plaintiff.
Reeve was removed to the Minden Sanitarium where he was treated by Dr. R. B. Van Horn for multiple contusions to the head and body and for concussion and shock. X-ray films taken at that time apparently did not disclose the compression fracture later discovered. Plaintiff was confined to the hospital and his home until July 16, 1951, when Dr. Van Horn advised him he could return to work, which he did, performing the regular duties of his employment, but he did so, he states, with pain. On July 26th, he testified, because of the pain he was suffering, he consulted Dr. C. S. Sentell, who was then associated with Dr. Van Horn. His treatment thereafter consisted of microtherm treatments and wearing a back brace. On August 18, 1951, Dr. Sentell caused further X-ray pictures to be made of plaintiff's back and it was then found plaintiff had sustained a compression fracture of the twelfth thoracic vertebra. Until that date and since July 16th plaintiff had continued his work, though, as he states, with difficulty and pain. Upon discovery of the fracture Dr. Sentell immediately ordered him to discontinue work and sent him to Shreveport to be measured for a special back brace, which plaintiff wore for a considerable period of time.
On February 4, 1952, Dr. Sentell referred plaintiff to Dr. Ford J. Macpherson, orthopedic specialist of Shreveport, who made a thorough examination of plaintiff after which he directed Reeve to a physiotherapist in Shreveport from whom he received treatments until March 25, 1952.
Before trial physical examinations on April 23rd and October 4, 1952, respectively, were made by Drs. B. L. Cook and C. M. Baker, general practitioners of Minden, who testified on behalf of plaintiff. Examinations on May 22, 1952 were also made by Dr. George G. Garrett and L. L. Davidge, general practitioners of Shreveport, who, in turn, testified favorably for the defendants. Dr. C. S. Sentell was not called as a witness by either party, nor does the record explain why his testimony was not obtained.
It is admitted plaintiff sustained a compression fracture of the twelfth thoracic vertebra on May 29, 1951, while working in the scope of his employment and compensation was paid of $30 per week from May 29, 1951, to March 7, 1952. Also it is not disputed that hospital and medical expenses incurred by plaintiff were paid by the insurance carrier in the sum of $420.23.
Two questions are presented to the court for determination: First, is plaintiff totally and permanently disabled to perform the work he was engaged in at the time of his injury, without undue pain caused by the injury of March 29, 1951, and, second, should the penalties invoked by plaintiff for nonpayment of compensation be granted?
The evidence presented to substantiate plaintiff's right of recovery consisted of lay and expert medical testimony.
Plaintiff and his wife both testified as to a continuance of pain in the region of the spinal injury to the date of trial. Mrs. Reeve testified that her husband frequently complained and that she applied liniment for relief. It was testified that plaintiff did no work after being separated from defendant's employment other than during a *389 period of from December to March, when plaintiff attempted to operate a service station at Doyline, Louisiana. He stated he discontinued this work because business was not good. At the time of trial it appears that he was engaged as a clerk at a tourist court. Several witnesses were produced who testified that they never observed plaintiff performing any service of an arduous nature or doing any work which required bending or heavy lifting. The defense offered no rebuttal testimony as to the extent of and kind of employment followed by plaintiff subsequent to the injury of May 29, 1951. The record indicates that Reeve has never previously made any claim for injury and has during his adult years followed common labor jobs. His education is somewhat limited and he is not specially qualified to perform skilled work.
The medical evidence is in conflict. We feel that no purpose would be served by a detailed review of the testimony of each of the doctors who testified. Drs. Van Horn, Cook and Baker uniformly expressed their opinion that the continuance of pain complained of by Reeve resulted from an impingement of a nerve, it being explained that at the time the compression fracture occurred ligaments and tissues were torn, and that in the process of healing a certain amount of scar tissue was formed, which irritated a nerve. All of these witnesses expressed the opinion that sandblasting requires considerable stooping and bending, and that a renewal of this employment would cause constant irritation to the nerve with resulting pain. They all stated that it was most uncertain when plaintiff could resume his position as a sandblaster without suffering from the pain presently complained of. Accordingly, their conclusion was that plaintiff was totally and permanently disabled.
Of contrary opinion were the views of Drs. Garrett, Davidge and Macpherson. The first two named physicians examined Reeve on May 22, 1952, approximately a year after his injury. Their findings were entirely negative and they expressed the opinion plaintiff could return to his former duties on that date without any disability due to the injury he sustained. Dr. Macpherson gave plaintiff an orthopedic examination on February 6, 1952. At the time of this examination plaintiff was still wearing the brace prescribed by Dr. Sentell. He recognized that at that time Reeve was suffering a certain amount of pain which he believed to be of the muscular type of pain which follows the wearing of a brace. He said that to overcome this pain a strict type of exercise is required to build the muscles that have been resting and that usually following sufficient exercise the symptoms disappear. He opined that with thirty days of active exercise Reeve should have been able to return to his job. The doctor took the position that the fracture sustained a mild degree of compression, and that ordinarily such injuries clear up within a period of six months, but disability primarily depends upon whether or not there is nerve involvement or involvement of the spinal cord. He stated the only suggestion of nerve involvement shown by his examination was a slight diminution in the right knee jerk. However, he said this was not too significant since the muscle power in the extension of the foot and thigh muscles appeared to be good. He expressed an opinion that from the time of his examination in February until May when the patient was seen by Drs. Garrett and Davidge he should have overcome the effect of the brace and have been able to return to his work. Another objective finding in this examination was a flattening and atrophy of certain muscles in the back. This he did not consider important as he failed to find any evidence of sensory or motor disturbance. He observed, as did all of plaintiff's doctors, a large bursa on the exterior surface of the spine, level with the compression fracture. His opinion was that though this perhaps caused plaintiff some discomfort, it was not specially significant. Dr. Macpherson did not examine plaintiff after February 6, 1952.
After plaintiff discontinued his physiotherapy treatments on March 25, 1952, he apparently received no further medical treatment. The record indicates that the insurance carrier terminated compensation on March 7, 1952, upon the receipt of advice from Dr. Sentell.
*390 Counsel for defendants insist that plaintiff has not established his case by a preponderance of the evidence, pointing out that there were no demonstrative objective symptoms to substantiate plaintiff's complaint of pain. It is well known that pain is purely subjective and may not be completely disproved. We note some objective indications of pain were observed by Dr. Macpherson at the time of his examination on February 4, 1952. These signs of pain must be considered along with the fact that plaintiff did have a very serious accident and injury, and it must be remembered also that defendants do not dispute that plaintiff experienced pain in the same place now complained of prior to the time compensation payments were discontinued. These factors, coupled with the affirmative testimony of plaintiff, which has not been discredited in any wise, have persuaded us that recovery of compensation should be permitted. See Wilson v. Crow Drilling Company, La.App.1944, 20 So.2d 191; Stovall v. American Employers Insurance Company, La.App., 1946, 26 So. 2d 321.
In the instant case the court necessarily must rely to some extent upon the lay witnesses and the positive testimony of Reeve and his wife, that plaintiff suffers back pain. It, of course, is well recognized by our jurisprudence that plaintiff is not required to continue his employment while suffering from substantial pain, in order to meet the requirement for recovery under the Workmen's Compensation Act. The test of total and permanent disability is whether the injured employee is capable of performing the work or the occupation in which he was engaged at the time of injury or whether he is able to do the kind of work he is trained to do or customarily does in the usual and customary way and without any serious impairment of his capacity to perform such work. See McKenzie v. Standard Motor Car Company, La.App.1943, 15 So.2d 115; Butzman v. Delta Shipbuilding Company, La.App. 1945, 21 So.2d 80; Hecht v. Higgins Industries, La.App.1946, 25 So.2d 351; Stovall v. American Emp. Ins. Co., La.App.1946, 26 So.2d 321; Mitchell v. T. J. Moss Tie Co., La.App.1946, 27 So.2d 385; Fisher v. Standard Accident Insurance Co., La.App.1947, 28 So.2d 59; Richardson v. American Emp. Ins. Company, La.App.1947, 31 So.2d 527; rehearing refused La.App., 32 So.2d 108; Gilmore v. George W. Garig Transfer, La.App.1948, 33 So.2d 99; Bailey v. Maryland Casualty Company, La.App. 1948, 34 So.2d 354; Sutcliffe v. E. I. Dupont De Nemours & Company, La.App.1948, 36 So.2d 874; Cobb v. A. G. McKee & Company, La.App. 1950, 45 So.2d 432; Anders v. Employers' Liability Assurance Corporation, La.App.1951, 50 So.2d 87.
Our brother below after trying this case and observing the demeanor of those witnesses who took the stand and after weighing all of the evidence in the case, reached the conclusion that plaintiff was totally and permanetly disabled under the provisions of the Workmen's Compensation Act and rendered judgment accordingly. Thus, the judge a quo has been placed in a better position to determine the sincerity of plaintiff's subjective complaints than we are through simply reading the testimony as found in the record. Written reasons for judgment were not filed, but it is logical to assume that the trial court placed some reliance upon the positive testimony of plaintiff and other lay testimony.
It is the practice of this court to regard the decision of the trial court with careful consideration and not to overturn a judgment except upon a showing of clear, positive and manifest error. See Dupree v. Monroe Sand & Gravel Co., 1943, 18 So.2d 845; Lunkin v. Triangle Farms, Inc., 1945, 24 So.2d 213; Eldridge v. Federal Compress & Warehouse Co., 1945, 24 So.2d 492; Howell v. Clemons Bros. Lumber Co., 1947, 32 So.2d 60; Williams v. Armour Fertilizer Works, Inc., 1950, 45 So.2d 640; Skyles v. United Investment Corporation, 1950, 46 So.2d 662; Chelette v. Russell, 1952, 59 So.2d 210; Malone, Louisiana Workmen's Compensation Law and Practice, section 252, page 301.
There is, as related above, an irreconcilable conflict in the medical testimony offered in this case and from this evidence we are compelled to resort to the lay testimony for the purpose of discovering *391 whether recovery should be permitted. We have reached the conclusion that plaintiff has established his case by a preponderance of the evidence. In the position thus taken, we are strengthened by the position taken by the judge a quo.
Plaintiff urges that defendants should be assessed with penalties and attorneys' fees resulting from defendants' failure to pay compensation within sixty days after satisfactory proof is alleged to have been presented following the discontinuance of compensation by the insurer on March 7, 1952. The statute provides that such penalties shall be assessed only when the failure is found to be arbitrary, capricious or without probable cause. There is nothing in this record to show that the discontinuance of the compensation was arbitrary, capricious or without probable cause, therefore, we do not find merit in plaintiff's contention.
In view of our findings herein, it follows that the judgment from which appealed should be, and it is hereby affirmed at appellants' cost.