GLADNEY, Judge.
Eugene M. Nubles instituted this action against the Texas Gas Transmission Corporation and Liberty Mutual Insurance Company for workmen’s compensation, together with statutory penalties and attorney’s fees for an accidental employment injury suffered by his son, Harold Nubles, a minor over eighteen years of age, who received a severe cut on his left elbow from an axe handled by a fellow employee.
■ After trial judgment was rendered awarding compensation at the rate of $26 per week during disability not to exceed 400 weeks, subject to a credit of compensation paid from the date of injury, August 12, 1952, through February 17, 1953. Plaintiff’s demands -for penalties and attorney’s fees were rejected. Both defendants have appealed suspensively and upon appearing before this court their counsel concede the only issue to be determined here is the extent and duration of the accidental injury suffered by young Nubles. Counsel for plaintiff has expressly abandoned any claim for statutory penalties and attorney’s fees.
. Harold Nubles attended the 1952-1953 school session at the Bastrop High School. In September, 1953, his family moved to Monroe so that Harold could attend college at Northeast Louisiana State College. In June of 1952 young Nubles obtained a job performing manual labor in Morehouse Parish with the Texas Gas Transmission Corporation.
On August 12, 1952, he suffered the injury giving rise to this suit. Immediately following the accident Nubles was taken to Bastrop and placed under the care of Dr. John C. Hundley. The wound was treated by Dr. Hundley who referred' to it as a “small laceration of the left elbow, which apparently exposed the joint capsule; saw no serious damage, no vital structures injured ’and the wound was sutured.” The patient was discharged September 2nd, being reported as cured and able to return to work on September 17th. Young Nubles returned to Dr. Hundley again on December 10th complaining of pain in the region of his left elbow and after examination was referred to Dr. Faheam Cannon, an orthopedic specialist of Monroe. For some time after December 16,- 1952, Dr. Cannon gave X-ray treatments for a condition described by him as a light .inflammation of the olecranon bursa. These treatments failed to relieve the condition and on January 14, 1953, Dr. Cannon, assisted by Dr. Hundley, removed the olecranon bursa from Nubles’ left elbow. The patient underwent a period of recuperation until he. was discharged as cured and able to return to his former work February 17, 1953. Dr. Cannon indicated in his testimony the bursa so removed was so well defined he was positive he removed all foreign bodies from the *567 area and in his opinion there was no reason for a recurrence of the trouble.
Some time later, March 14, 1953, Nubles suffered an accidental gunshot wound in the calf of his left leg and was under the medical care of Dr. Hundley until May 4th, when he 'was released. During this period of time Dr. Hundley said there was no noticeable inflammation of the left elbow, and no complaint of pain was made by Nubles. Both Drs. Cannon and Hundley considered the bursa operation a complete success.
Plaintiff instituted this suit on March 6, 1953, and it was tried on September 23, 1953. Just prior to suit respondents tendered to plaintiff accrued compensation to February 17, 1953. Compensation had previously been paid to September 3, 1952. The delay in the payment of the compensation or the tender thereof brought about plaintiff’s claim for statutory penalties and .attorney’s fees, which now are no longer an issue in the case.
Nubles submitted to other medical examinations during 1953 as follows: Dr. J. N. Jones in February and on September 20th; Dr. W. V. Gamier March 17th; Dr. A. Scott Hamilton April 20th; Dr. J. W. ■Cummins July 7th and during the latter part of September; and Dr. Bennie E. Spencer on August 22nd.
The expert testimony is conflicting. Dr. ■Gamier did not testify but his report of an ■examination on March 17th was produced as evidence. He found tenderness at the ■site of the operation and gave his opinion any disability or pain following the surgery •would disappear in six months. Drs. Hundley, Cannon and Hamilton were of the opinion that Nubles, upon their final examination, was without disability and Rad sufficiently recovered to be capable of performing the work he was engaged in at the time of his injury. To the contrary, Drs. Jones, Spencer and Cummins were of the opinion that as of the time of treatment plaintiff could not do hard or manual labor without suffering pain from the original injury. From the testimony of the latter witnesses it cannot be determined definitely when plaintiff’s arm would become free of pain and completely healed. Dr. Spencer testified in his opinion there would be likelihood of the recurrence of the bursa trouble and that Nubles would not be acceptable as .an employment risk, further stating that as an examining doctor for industrial work Nubles would be unacceptable to him.
After May 4th defendants did not require Nubles to be examined by any doctor selected by them. The examinations of Drs. Jones and Cummins subsequent to May 4th were made at the request of plaintiff and were for examination and opinion rather than for treatment. On August 22nd Nubles reported to Dr. Spencer who found the left elbow inflamed, hot and discolored, requiring lancing and removal of fluid. Dr. Cummins testified upon his last examination Nubles was found to have scars which apparently gave pain but otherwise he suffered no disability. Dr. Jones emphasized a grating sound evidenced upon extension or contraction of the left arm and expressed his opinion ligaments and. muscles in the left elbow were not functioning properly. He opined Nubles was totally disabled to perform manual labor and he could not say whether there would be subsequent improvement.
In corroboration of plaintiff’s medical evidence the parents of Harold Nubles testified that it was necessary frequently to give treatment to Harold’s arm for the purpose of relieving pain and such treatments were being given him in September when the case was tried. Harold Nubles likewise testified to this effect.
 In the case of Reeve v. Clement-Braswell Mach. & Fabricating Works, La. App.1953, 66 So.2d 387, 390, this court said:
“* * * It, of course, is well recognized by our jurisprudence that plaintiff is not required to continue his employment while suffering from substantial pain, in order to meet the requirement for recovery under the Workmen’s Compensation Act. The test of total and permanent disability is whether the injured employee is cap *568 able of performing the work or the occupation in which he was engaged at the time of injury or whether he is able to do the kind of work he is trained to do or customarily does in the usual and customary way and without any serious impairment of his capacity to perform such work. See McKenzie v. Standard Motor Car Co., La.App. 1943, 15 So.2d 115; Butzman v. Delta Shipbuilding Co., La.App.1945, 21 So. 2d 80; Hecht v. Higgins Industries, La.App.1946, 25 So.2d 351; Stovall v. American Emp. Ins. Co.. La.App.1946, 26 So.2d 321; Mitchell v. T. J. Moss Tie Co., La.App. 1946, 27 So.2d 385; Fisher v. Standard Accident Insurance Co., La.App. 1947, 28 So.2d 59; Richardson v. American Emp. Ins. Co., La. App.1947, 31 So.2d 527; rehearing refused La.App., 32 So.2d 108; Gilmore v. George W. Garig Transfer, La.App. 1948, 33 So.2d 99; Bailey v. Maryland Casualty Co., La.App. 1948, 34 So.2d 354; Sutcliffe v. E. I. Dupont De Nemours & Co., La.App.1948, 36 So.2d 874; Cobb v. A. G. McKee & Co., La. App.1950, 45 So.2d 432; Anders v. Employers’ Liability Assurance Corporation, La.App.1951, 50 So.2d 87.”
Our brother below after trying this case and observing the demeanor of those witnesses who took the stand and after weighing all of the evidence in the case, reached the conclusion that plaintiff was totally and permanently disabled under the provisions of the -Workmen’s Compensation Act LSA-R.S. 23:1021 et seq., and rendered judgment accordingly. Thus, the judge a quo has been placed in a better position to determine the sincerity of plaintiff’s subjective complaints than we are through simply reading the testimony as found in the record.
It is the practice of this court to regard the decision of the trial court with careful consideration and not to overturn a judgment except upon a showing of clear, positive and manifest error. See Dupree v. Monroe Sand & Gravel Co., La.App. 1943, 18 So.2d 845; Lunkin v. Triangle Farms, Inc., La.App.1945, 24 So.2d 213; Eldridge v. Federal Compress & Warehouse Co., La.App.1945, 24 So.2d 492; Howell v. Clemons Bros. Lumber Co., La.App.1947, 32 So.2d 60; Williams v. Armour Fertilizer Works, Inc., La.App.1950, 45 So.2d 640; Skyles v. United Inv. Corp., La.App.1950, 46 So.2d 662; Chelette v. Russell, La.App.1952, 59 So.2d 210; Malone, Louisiana Workmen’s Compensation Law and Practice, section 252, page 301.
There is, as related ahove, an irreconcilable conflict in the medical testimony offered in this case and from this evidence we are compelled to resort to the lay testimony for the purpose of discovering whether recovery should be permitted. We have reached the conclusion that plaintiff has established his case by a preponderance of the evidence. In the position thus taken, we are strengthened by the position taken by the judge a quo.
It follows from our finding that the judgment from which appealed should be and it is hereby affirmed at appellant’s cost.