In this suit plaintiff seeks compensation against his employer, the Canulette Shipbuilding Company, and its insurance carrier, the Maryland Casualty Company, at the rate of $20 per week for a period of 400 weeks, alleging that while in the course and scope of his employment as a carpenter by defendant company, on April 26, 1943, at about 10:00 A.M., he strained himself while lifting a heavy timber, and as a result sustained a left inguinal hernia which totally disabled or incapacitated him from doing work of any reasonable character. By supplemental petition, after defendants had filed their answer, plaintiff alleged that the accident had occurred on April 20, 1943, instead of April 26, 1943.
The District Court, after hearing the case, came to the conclusion that plaintiff had failed to prove that his condition was caused by an accident, as alleged, and consequently rendered judgment in favor of the defendants. Plaintiff has appealed.
It appears that plaintiff was examined for employment with Higgins Industries, Inc., on October 13, 1942, at which time there was no evidence of a hernia. He then worked for Higgins, Inc., for a period of some two or three months, after which the whole crew was laid off on account of lack of work. In the latter part of January, 1943, he was employed, without physical examination, by the defendant employer.
A review of the evidence in this case shows, as pointed out by the trial judge in his written reasons for judgment, that the plaintiff's testimony with reference to the accident alleged is largely discredited by the other evidence in the case.
[1] The date and time of the accident as testified to by the plaintiff, and as supported by the witnesses Duncan and Stewart, is at 10:00 o'clock A. M., on April 20th, but the time cards, executed by the plaintiff himself, show that on April 20th he worked for his full 8 hours. Notwithstanding that fact, he testifies that after the accident, which happened at 10 o'clock, he merely stayed on the job without doing much of anything until 12:00 o'clock, when he left for his home and hitchhiked there, and that upon arriving at home he discovered that he had a lump on his left side as big as an egg; that he stayed home for the rest of that day and for two days thereafter; and that he then returned to his work and stayed on the job until April 25th, being paid on April 26th, on a Sunday, and thereafter secured his release on May 3rd. The time cards, however, show that he worked, as aforesaid, on the day of the alleged accident his full eight hours, Tuesday, April 20, 1 1/2 hours on the next day, Wednesday, 8 full hours on the next day, Thursday, was away on Friday, and 8 full hours on Saturday following. It is also shown by the time cards and by the employee's record of earnings that he worked 8 full hours on April 29th, and 8 full hours on April 30th, 1943. On May 3, 1943, plaintiff sought and obtained his release from defendant's employment. *Page 101 
From the evidence, we gather that when plaintiff sought and obtained his release on May 3, 1943, from defendant employer, it was not because he had met with an accident resulting in a hernia but it was because he was seeking new employment with increase in wages. He made his application for work with Todd-Johnson Dry Docks, Inc., some nine days thereafter, or May 12, 1943. He was then referred to Dr. Romano for a physical examination. Dr. Romano found that plaintiff had a left inguinal hernia. Plaintiff was so informed and was refused employment. On that day, he visited the plant of defendant company and informed an officer of defendant company and his former foreman of his hernia, contending that he had received it while in the course and scope of his former employment. This appears to be the first notice that defendant company had of any alleged accident or injury to the plaintiff.
There seems to be no question that the plaintiff has been suffering with a left inguinal hernia at least since May 12, 1943, some 12 days after his last day of employment and 9 days after his release therefrom, and the only serious question is whether or not he has proved that this hernia resulted from an accident in the course and scope of his employment by defendant.
As stated before, the only testimony with reference to an accident is his own, plus the testimony of witnesses Duncan and Stewart, fellow employees who were working with him and who both testified that on or about April 20th, some time in the morning, plaintiff complained of having strained himself and having hurt his left side; but as pointed out hereinabove, the plaintiff's testimony is largely discredited by his record of employment.
Plaintiff's testimony is further discredited in that he received the full wages as shown by his record of employment. He testified that although he had received the full wages as called for by the time record, someone must have punched the time clock for him without his permission, and that the check for $18.71 received by him on May 3, 1943, for the wages earned on April 29 and 30, as shown by the time record, were not for wages but money retained by defendant company for the purpose of buying bonds. In this, he is contradicted by the time record, the testimony of the bookkeeper, and the voucher or check issued therefor and cashed by him. Moreover, plaintiff is flatly contradicted by Willie Davis, who testified that he was working with plaintiff and with Messrs. Duncan and Stewart during the whole month of April, 1943, and that if plaintiff had sustained an accident, it would not have escaped his notice. Furthermore, Edgar J. Pechon, witness for defendant, testified that his job was that of Leaderman and that his duties consisted of going around the various employees to see that they were performing their work properly, and that Duracher was one of the men under him, and that Duracher had never reported any accident to him, although the employees were fully aware of the fact that accidents were supposed to be reported to him and that there were signs placed in various parts of the plant where they could be easily seen advising employees to report such accidents. Elbert R. Weaver, the defendant's foreman, testified that he never had any knowledge of any accident sustained by plaintiff until some time in May, when Duracher came to the plant to report that he had sustained a hernia.
[2, 3] The plaintiff strenuously argues that the time cards of plaintiff and his work record should not have been admitted for the reason that they are self-serving declarations and are from the books of defendant company. The plaintiff loses sight of the fact that this is a compensation case wherein the rules of evidence are relaxed and the further fact that these time cards or records are made by the employees themselves. If the time cards are self-serving declarations, they are in favor of the employees, plaintiff included, and not on behalf of the employer. It is by these time cards executed by the employees that the employees are paid their wages.
It appears from the evidence that unless we want to believe the plaintiff and Duncan and Stewart, and disbelieve the other witnesses, the time cards made by plaintiff himself and the work records, we must reach the conclusion that the plaintiff has failed to establish the alleged accident to a legal certainty, and we must therefore affirm the judgment below. The district judge, who heard the case and who saw the witnesses on the witness stand, failed to believe plaintiff and his two witnesses, apparently because of the inconsistency in plaintiff's testimony and his record of employment, but also to some extent at least because of their demeanor on the witness stand. We feel that his conclusion, due to the great advantage he has on us in judging this testimony, should not be disturbed. *Page 102 
Furthermore, it seems proper to make the observation that this is not a case, as contended by plaintiff, where an employee sustained an accident without knowing the resultant injury, for his own testimony is that he immediately after the alleged accident had the symptoms of a hernia injury, and upon returning to his home discovered a bulge in his left side as big as an egg and yet did not at that time, on April 20th, report to his employer, in fact not until after his examination for employment by Todd-Johnson on May 12th. Like the trial judge, we cannot believe that testimony, and as aforesaid do not feel that the finding of fact of the able trial court should be disturbed. Judgment affirmed.